AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

2019 AUG 13  AM 11: 52

| In the Matter of the Search of | ) | |
|---|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. **3:19 mj 499** |
| CELLULAR TELEPHONE 937-830-0448 | ) ) ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Southern_____ District of _____Ohio_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC s. 846 | conspiracy to distribute controlled substances |
| 21 USC s. 841(a)(1) | possession with intent to distribute controlled substances |
| 21 USC s. 843(b) | use of telephone communication facility |

The application is based on these facts:

See Attached Affidavit of Steven Duteil

☑ Continued on the attached sheet.

☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Steven Duteil, Task Force Officer of the DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___8/13/19___

_____
*Judge's signature*

City and state:  Dayton, Ohio

Michael Newman, US Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A CELLULAR TELEPHONE ASSIGNED CALL NUMBER 937-830-0448 | Case No. _____ <br><br> **Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Steven V. Duteil, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of a cellular telephone assigned call number **933-830-0048**, utilized by **David D. HUNT** (hereinafter referred to as "**Target Telephone**"), whose service provider is T-Mobile, a wireless telephone service provider.  Investigators have requested the International Mobile Subscriber Identity ("IMSI") number and subscriber information from T-Mobile, which has not been returned. The **Target Telephone** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.     I am a Task Force Officer with the DEA, and have been since August 25, 2014. Your affiant worked as a uniformed Ohio State Patrol (OSP) Trooper from 1993 until 2009, and was subsequently transferred to the Office of Investigative Services (OSP) section until 2011.  In 2011, your affiant was promoted to Sergeant, and was transferred to the Springfield Post of the Ohio State Patrol. During this time period, the affiant has conducted numerous narcotic related investigations involving illegal narcotics; and prepared and executed search warrants for

locations where cocaine, marijuana, heroin and prescription pills were stored/ distributed. I have conducted investigations into conspiracy to convey narcotics into state owned facilities; unlawful possession, possession with the intent to distribute, and actual distribution of controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1). I have also been involved with the administrative duties and monitoring responsibilities of Title III Wire intercepts, and analysis of pen registers related to narcotics and gang investigations. I am familiar with their methods of concealing the whereabouts of illegal drugs, the methods used to keep law enforcement officers from finding evidence of drug trafficking operations, as well as the methods used to prevent others unfamiliar with criminal conduct from observing things indicative of drug trafficking. I am also familiar with the paranoia surrounding most drug traffickers and the common ways in which wholesale drug distributors attempt to conceal their assets, their purchases, and other financial dealings that could be traced to them.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. Through training and experience, your Affiant is aware that drug traffickers often communicate with their customers, couriers, and/or associates through the use of standard hardline telephones, cellular telephones and digital display paging devices, or use of multiple telephones or other devices, to avoid detection by law enforcement.

4.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended

2

to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 846 and 841 (distribution of a controlled substance and conspiracy to commit the same); and 21 U.S.C. § 843(b) (use of a communications facility to commit a felony) have been committed, are being committed, and will be commmited by an individual utilizing the **Target Telephone**. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

## PROBABLE CAUSE

6.      Your Affiant submits, based on the facts below, that there is probable cause to believe that the **Target Telephone**, as described above, is being utilized by **David D. HUNT**, a large scale Crystal Methamphetamine / Fentanyl/ Cocaine/ Heroin distributor known to have been supplied by Eduardo BONILLA, and the BONILLA DTO.

7.      The DEA Dayton Resident Office has been investigating a large scale Crystal Methamphetamine / Fentanyl/ Cocaine/ Heroin organization based in Mexico with ties to the Southern District of Ohio.  As detailed more fully below, agents obtained information that, during late 2017 and 2018, **David Deonta HUNT** (hereinafter "HUNT") received and or intended to receive Fentanyl/ Heroin from the Eduardo BONILLA DTO.

8.      I have reviewed various databases concerning **HUNT'S** criminal history.  From this review, I know that **HUNT** has served three (3) separate prison terms for various crimes. In

3

2011 **HUNT** was sentenced to 5 years for an Aggravated Robbery conviction. In 2014, HUNT was sentenced to 4 years for Failure to Comply. In 2016, **HUNT** was sentenced to 3.84 years for Having Weapon While Under Disability. All cases were adjudicated in Montgomery County, Ohio Common Pleas Court. Furthermore, **HUNT'S** CCH shows he was arrested in November of 2009 in Montgomery County for Drug Possession Charge (Felony). In July of 2014 **HUNT** was arrested in Montgomery County and charged with Drug Trafficking (Felony). **HUNT** currently remains on supervised state parole in Montgomery County, Ohio.

9.      In July of 2018, the affiant learned that **HUNT** and his girlfriend, Bianca OFFUTT were stopped for questioning by Cincinnati DEA agents at the Greater Cincinnati/Northern Kentucky Airport as they were preparing to fly to Los Angles, California. Subsequent investigation resulted in the seizure of $20,000.00 USC. Federal forfeiture is ongoing. Based on the amount of currency seized from **HUNT** and OFFUTT, and other alleged criminal activity mentioned above, the affiant believes that both are involved in drug trafficking activity.

10.     During July of 2018, I interviewed a source of information (SOI) (hereinafter referred to as SOI (1). I have been able to corroborate information that SOI (1) has provided to me, and as such, I consider him/her truthful and reliable. The SOI (1) advised me that, an African American male who lives in Dayton, Ohio, who the SOI (1) only knows as "Dave", supplied Takeea TRAMMELL with a Mercedes Benz, bought by Eduardo BONILLA for two pounds of Crystal Methamphetamine. The SOI (1) stated "DAVE" is the African American male who was going to supply BONILLA'S Mexican source of supply with 20 new AR-15 assault rifles.

11.     In September of 2018, the affiant, SA Charles Vill (DEA), and TFO Mark Hoyle (DEA) interviewed SOI (2). SOI (2) is considered "Kingpin" in the BONILLA DTO, and has

4

agreed to cooperate with this investigation.    I have been able to corroborate information that SOI (2) has provided to me, and as such, I consider him/her truthful and reliable.

12.    SOI (2) was shown a photo of David **HUNT**, and SOI (2) identified the photo as David **HUNT**, and stated he called **HUNT "TRU Dave**." SOI (2) stated he/she has supplied **HUNT** with approximately ½ kilogram of Fentanyl per week since approximately October 2017. SOI (2) stated he/she charged **HUNT** $75,000.00 per kilogram.  SOI (2) also stated he /she was arranging a deal where **HUNT** would provide the SOI (2) with 50 AR-15 Assault Rifles for $775.00 a rifle.  The SOI (2) stated the rifles were to be shipped back to Mexico to a cartel.

13.    SOI (2) stated to investigators that the 6 kilograms of Carfentanil/Fentanyl that the DEA intercepted in Amarillo, Texas in May of 2018 was a shipment he/she orchestrated.  SOI (2) stated that 4 of the aforementioned kilograms were to be delivered to **HUNT** at a cost of $100,000.00 USC per kilogram.

14.    The SOI (2) stated he/she purchased a Mercedes Benz for a friend from **HUNT** for 3 pounds of Crystal Methamphetamine.  Investigators have confirmed Takeea TRAMMELL recently received a 2007 Mercedes Benz that has no lien.

15.    In June of 2019, DEA Carbondale POD, located in southern Illinois, conducted several proffers of suspects after a lengthy T-3 wire intercept.  Two known suspects, hereinafter refered to as SOIs 3 and 4, informed investigators that they were being supplied by a black male from Dayton, Ohio who they knew as **David Hunt.** Both SOI's who are releated, stated over the past 6 months they have received approximately 20-30 pounds of Crystal Methamphetamine and 3 kilograms of Cocaine from **HUNT.** Furthermore, both SOIs stated that **HUNT** would oversee

the loads of drugs when there were delivered to the Mt. Vernon, IL area. **HUNT** reportedly would have couriers, driving a separate vehicle, carry the drugs, and he (**HUNT**) would follow in another vehicle to make sure the load was delivered and received.

16.     In August of 2019, the Affiant checked the Ohio Prison J-Pay system (inmate email to the outside) and read two emails **HUNT** sent to two current inmates. In these emails, **HUNT** discloses two new phone numbers to these inmates, one being the **Target Phone** number.

17.     In summary, Affiant believes the **Target Telephone** is currently being used by **David D. HUNT** to facilitate his DTO in the tri-state area (Ohio,Indiana, Illinois) and possibly other locations.

18.     In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily

6

serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data**.**

19.     Based on my training and experience, I know that T-Mobile can collect E-911 Phase II data about the location of the **Target Telephone**, including by initiating a signal to determine the location of the **Target Telephone** on T-Mobile network or with such other reference points as may be reasonably available.

20.     Based on my training and experience, I know that T-Mobile can collect cell-site data about the **Target Telephone**.

## AUTHORIZATION REQUEST

21.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

22.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **Target Telephone** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2).

7

Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510), or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2)

23.     I further request that the Court direct T-Mobile to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile.  I also request that the Court direct T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the **Target Telephone** on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall reasonably compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

24.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Telephone** outside of daytime hours.

25.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

Steven V. Duteil
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me on this 13th day of August, 2019.

MICHAEL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

9

## ATTACHMENT A

### Property to Be Searched

1. A cellular telephone assigned call number, (937) 830-0048 ("**Target Telephone**"), whose wireless service provider is T-Mobile, a company headquartered at Parsippany, NJ.

2. Information about the location of the **Target Telephone** that is within the possession, custody, or control of T-Mobile, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

All information about the location of the **Target Telephone** described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the **Target Telephone**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephones described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile, T-Mobile is required to disclose the Location Information to the government. In addition, T-Mobile must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the **Target Telephone** on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).